868 F.2d 458
 276 U.S.App.D.C. 129
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CINCINNATI GAS & ELECTRIC COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 88-1117.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 24, 1989.
 
 Before STARR, STEPHEN F. WILLIAMS and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 Per Curiam.
 
 
 1
 This case was reviewed on the record from the Federal Energy Regulatory Commission and was briefed and argued by counsel. The Court has considered the issues presented and concludes that they occasion no need for a published opinion. See D.C.Cir.R. 14(c) (August 1, 1987). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that the petition for review is denied. It is
 
 
 3
 FURTHER ORDERED, by the Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15 (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Cincinnati Gas & Electric Company ("CGE") and Dayton Power & Light Company ("Dayton"), along with numerous intervenors, petition for review of a decision by the Federal Energy Regulatory Commission accepting a rate adjustment filed by Columbia Gas Transmission Corporation. In particular, CGE and Dayton challenge FERC's interpretation of a 1985 comprehensive settlement agreement.
 
 
 5
 * To state the obvious: Pipeline rates are determined in proceedings under section 4 of the Natural Gas Act, 15 U.S.C. Sec. 717c (1982), with the exception that costs of purchasing gas may be recovered through semi-annual "Purchase Gas Adjustments" ("PGAs"), 18 C.F.R. Sec. 154.38(d)(4) (1985) (current version at 18 C.F.R. Sec. 154.302(j) (1988)); see Office of Consumers' Counsel v. FERC, 783 F.2d 206, 213 (D.C.Cir.1986). In 1985, Columbia and its customers entered into a "Stipulation and Agreement" which settled a number of issues with respect to Columbia's rates and gas purchasing practices. Columbia Gas Transmission Corp., 31 FERC p 61,307 (1985); modified 33 FERC p 61,344 (1985), reh'g denied, 40 FERC p 61,195 (1987). Article I of the settlement provided that, for the two-year settlement period ending March 31, 1987, Columbia could not (with certain exceptions) apply for rate increases under section 4. Article II, among other things, restricted Columbia's recourse to PGAs. Specifically, Article II provided that, Columbia's commodity rate was (with certain exceptions) to be maintained at $3.60 per Dth; however, any costs above $3.60 per Dth could not be recovered and were thus to be borne by Columbia's shareholders. Stipulation and Agreement at 7-8; see also 31 FERC p 61,397 at 61,675-76. In addition to the $3.60 cost ceiling, Article II provided an incentive for cost reduction, namely that Columbia was allowed to retain 50% of any decrease in costs below $3.29 per Dth. The remaining 50% in cost savings was to be distributed to Columbia's customers through a negative "Benchmark Surcharge."
 
 
 6
 On July 31, Columbia filed a PGA, Columbia Gas Transmission Co., 40 FERC p 61,207 (1987), reh'g denied, 42 FERC p 61,126 (1988), which reflected data to the effect that Columbia's cost of gas in the previous year was $122.8 million below the $3.29 per Dth level. Pursuant to the settlement, Columbia proposed to pass 50% of this amount to its customers via a negative Benchmark Surcharge.
 
 II
 
 7
 Petitioners' primary contention is that Columbia violated Article IV of the settlement by including "minimum commodity bill" payments in its cost of gas. Petitioners principally rely on the following portion of Article IV:
 
 
 8
 Except for unrecovered pipeline supplier demand costs, which may be recovered by Columbia via demand surcharges, there shall never be any surcharges or accrual for rate purposes of unrecovered costs applicable to gas purchased during the Settlement Period or payments or charges for gas not purchased during the Settlement Period, including but not limited to prepayments, take-or-pay buy outs, or any associated carrying charges.
 
 
 9
 Stipulation and Agreement at 14. According to petitioners, the plain meaning of the phrase "payments or charges for gas not purchased" encompasses minimum bill payments because the latter typically involve payments to suppliers for a given volume of gas regardless of whether the gas is purchased. See Wisconsin Gas Co. v. FERC, 770 F.2d 1144, 1157 (D.C.Cir.1985), cert. denied, 106 S.Ct. 1968 (1986).
 
 
 10
 For reasons that escape us, FERC chose not even to address this argument in its order accepting Columbia's PGA filing subject to refund. J.A. at 77. In its order on rehearing however, J.A. at 71, the agency examined, and rejected, petitioners' proffered interpretation of the settlement. The Commission expressly recognized that the language of Article IV "might, in other circumstances, indicate an intent to exclude minimum bill charges," but concluded that the provisions of Article II (as further clarified by Appendix B) foreclosed that interpretation. J.A. at 75. In particular, FERC pointed to Article II's statement that the Benchmark Surcharge be based on "Columbia's then existing commodity rate being charged under this Stipulation in accordance with the procedures set forth in Appendix B." Stipulation and Agreement at 8. Appendix B, in turn, directed Columbia to "determine its cost of gas purchased" using the same calculations contained in Columbia's January 29, 1985 PGA. Stipulation and Agreement at 40. As FERC recognized, that filing included minimum bill costs. J.A. at 75. In view of Article II (and its references to Appendix B and, via Appendix B, the January 1985 PGA filing), the Commission concluded that minimum bill payments were properly included in the calculation of the negative Benchmark Surcharge as a cost of "gas purchased." Id. FERC observed that such treatment reflects orthodox practice in the industry; that is, pipelines typically include minimum bill costs as "purchased gas costs" in their PGA filings. J.A. at 75 n. 12, citing III FERC Statutes and Regulations, p 30,584 at 31,043 (1984). According to the Commission, then, the most logical (and structurally global) reading of the settlement was that Columbia's gas cost for surcharge purposes was to be calculated in the usual manner of PGA filings, that is, by including minimum commodity bill amounts.
 
 
 11
 FERC's approach and conclusion are unassailable; unlike petitioners' interpretive method, the Commission's approach gives effect to Article IV's language limiting Columbia's cost recovery without ignoring Article II's incorporation of Appendix B. Petitioners' primary response (that Article II merely provides "procedures" for the calculation of the Benchmark surcharge) is, at bottom, a mere play on words and is at odds with the language of Article II itself, which states that the Benchmark Surcharge will be based on Columbia's "then existing commodity rate being charged under this Stipulation in accordance with the procedures set forth in Appendix B." Stipulation and Agreement at 8; J.A. at 75 (emphasis added). Similarly, Article II (entitled "Settlement Rates") fixed the maximum rate of $3.60 per Dth that Columbia could charge during the settlement period. Article II, in short, is far more than a modest procedural provision. (And, for that matter, Article IV itself sets forth various procedures.).
 
 
 12
 For these reasons, the petition for review is denied. An appropriate order will issue accordingly.